EVA HODGES HOUSMAN V. STATE.

No. 24642. April 12, 1950.
Appellant's Motion for Rehearing Denied (Without
Written Opinion) June 14, 1950.

50

*Hughes & Monroe,* and *Samuel Donosky,* Dallas, for appellant.

*Will R. Wilson, Jr.,* District Attorney, *Waller M. Collie, Jr.,* and *Charles S. Potts,* Assistants District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for procuring an abortion, the jury having assessed the punishment at five years' confinement in the penitentiary.

It is uncontroverted that appellant inserted a rubber tube or catheter into the private parts or womb of the witness, Mrs. Mary Jo Daniels, for the purpose of and with the intent to produce an abortion, such being the means charged in the indictment.

The proof shows that Mrs. Daniels, the wife of a soldier and the mother of a two-year old child, was pregnant and that an abortion occurred, she passing the dead fetus on April 10, 1949, and receiving medical attention on that date, including the severing of the umbilical cord and removal of the rubber tube or catheter and the placenta, or afterbirth.

Appellant in her brief says that the only issue of fact in the case is whether the abortion of the witness, Mrs. Daniels, was procured by the appellant, as contended by the state, or whether it was brought about by the acts and conduct of a Dr. C. R. Finnegan, as was contended by the defendant.

This issue was fully and fairly submitted to the jury in the court's charge.

Also appellant, under the charge, was to be acquitted upon a finding that the abortion was brought about by any other means or in any other manner than that described in the indictment.

From their verdict, it is apparent that the jury accepted the state's version and rejected that of appellant's, which seems to be supported by the evidence.

Appellant, at her home, and in a room containing suitable furnishings and supplies, for a fee of $50 paid to her in cash, and for the express purpose of causing and bringing about an abortion, on April 6, 1949, inserted a catheter or rubber tube deep into the private parts of Mrs. Daniels and packed such parts with gauze.

Appellant agreed to abort Mrs. Daniels upon the condition that she would arrange with a doctor to take care of her. She suggested that Mrs. Daniels would need penicillin and advised medicines for her to take.

Mrs. Daniels did arrange with Dr. Finnegan to take care of her, and first had him make an examination for the purpose of establishing for certain that she was pregnant. The examination was made after the arrangement with appellant for the abortion, and before the tube was inserted. The same Dr. Finnegan was called by Mrs. Daniels prior to the passing of the fetus, but he did not attend her thereafter.

Appellant and her counsel, they say, knew nothing of the

connection of Dr. Finnegan with the abortion of Mrs. Daniels until it was elicited on her cross examination. The doctor was not present, and was not sought as a witness by either the state or appellant.

Upon cross examination of Mrs. Daniels, she was interrogated at length by able counsel for appellant regarding her former pregancy prior to the birth of her two-year old child, her menstrual periods following that birth, her knowledge of the symptoms of pregancy, and her knowledge and efforts to acquire knowledge of abortions and the interruptions of pregnancy and the causes thereof.

The witness denied any act done by her that might have caused an abortion other than her arranging with appellant to procure the abortion in the manner stated.

But upon her testimony that the doctor inserted his finger in the course of his examination, appellant based her contention that the doctor and not appellant caused the abortion.

Appellant's contention that the evidence "tends to show a guilty connection between appellant and Dr. Finnegan," if justified, constitutes no defense for appellant.

We agree with the trial court that the state had the right to fully develop its case, and to offer any evidence admissible under the rules of res gestae to show the guilt of appellant. Her plea to the charge was not guilty. The case under the court's charge was one of circumstantial evidence.

The fact that appellant made no objection to the testimony concerning the inserting of the tube in the private parts of the witness does not in any way affect the state's rights to make its proof in full. Failure to object cannot be construed to amount to a judicial admission.

We do not agree that the court abused his discretion in his rulings upon the objections to leading questions and the state's effort to show the surrounding facts and circumstances of appellant's acts in inserting the catheter for the purpose of procuring an abortion. See Long v. State, 58 Tex. Cr. R. 209, 127 S.W. 208.

The state was entitled to prove the circumstances and details of her contacts with appellant on the occasions of being at appel-

lant's home when the arrangements were made for the abortion, the visit when the act was performed for the purpose of aborting the witness, the money paid, and the return in accordance with instructions of appellant to confer regarding the passing of the fetus.

If such transactions disclosed, by inference or otherwise, that appellant was engaged in the commission of other acts of abortion, it was nevertheless admissible as a part of the res gestae.

We do not agree however that other offenses were shown by the evidence admitted. Therefore, there was no basis or necessity for a charge limiting evidence of "other offenses."

The upstairs room of appellant's home, where appellant inserted the catheter and received the $50 in cash in payment for her procuring an abortion on Mrs. Daniels, was described in detail by her witness. She said that the room was square, nine or ten feet in width, and contained a white padded table covered with a sheet, the table having two pieces of wood protruding from the ends of the table upon which she put her feet when she got on the table. Beside the table was a chair and another table on which was a small bag, a metal pan, a lamp, and some scissors and a number of rubber tubes or catheters of different sizes. After trying one catheter, appellant put it back and inserted another in the witness' private parts.

There was no error in the court's permitting the witness to so describe in detail the room she was in when the catheter was inserted, and its contents utilized on her.

If the state's proof of the home of appellant and the furniture, instruments, and equipment therein and the facts showing the use of such home and contents on the witness for the purpose of aborting her for pay show that appellant was a professional abortionist or that her home contained a room equipped as an abortion operating room, such result does not change the rule as to the admissibility of such evidence as a part of the res gestae.

Nor did the evidence become inadmissible because appellant did not testify or otherwise controvert the testimony as to her acts and intent.

No error is shown in the identification of the photograph

not admitted. The photograph, if inadmissible, was not exhibited to the jury, but the witness, in her testimony, described the room and the contents of the room which she saw, and identified the picture as correctly portraying same.

In ruling upon the objection regarding such photographs, the court merely remarked to counsel concerning his ruling in an attempt to understand the objection made. He gave to the jury no new information, and did not comment on the effect of the evidence or of his ruling. No error is presented in this regard. See Bevins v. State, 110 Tex. Cr. R. 52, 7 S.W. 2d 532; Jackson v. State, 97 Tex. Cr. R. 149, 260 S.W. 199.

There was no error in the court's permitting Dr. Murray to testify as to the examination called a "pelvic examination" used to determine pregnancy. It appears that the description given of such an examination is quite similar to the description given by Mrs. Daniels of the examination she testified was made of her by Dr. Finnegan, and which appellant contends was not an examination at all, but an act to produce, or in any event which did produce, an abortion.

In the light of appellant's statement that no issue existed as to the witness Mrs. Daniels having been aborted, we overrule without discussion the question raised by her Bill of Exceptions No. 4 regarding the statement, remarks and comments of the judge in connection with the testimony of Mrs. Daniels as to the passing of the fetus.

No error is shown in connection with the statement of Mr. Collie, the assistant district attorney, regarding the answers of Mrs. Daniels to a "double barrel" question. From the record, we do not agree that the purpose and effect of the statement was other than to correct the impression that the witness intended by her answer to the question to mean that she came back to Dallas to see a doctor to be aborted. The objection that the question "is a double barrel question" made by the state was sustained by the court, and the witness testified, in answer to a proper question, that she came back to Dallas to see appellant for the purpose of an abortion.

We cannot agree with appellant's contention that there was error in the reference by the witness Mrs. Daniels, the district attorney, and the court, to the room in which the catheter was inserted into the private parts of Mrs. Daniels as an "operating room." From its description, it seems to have been such a room.

Therein the "operation" was performed by appellant upon Mrs. Daniels by insertion of the catheter and gauze packing purposed to produce an abortion.

The careful trial court attempted to give appellant every protection in regard to this testimony, and evidently based his ruling upon the objection to the room being referred to as an "abortion operating room."

The room however was not referred to as an abortion operating room except by appellant's counsel in his objections.

The witness, Dr. Murray, was properly permitted to describe the effect of inserting a catheter into the private parts of a pregnant woman and to testify as to how it could cause an abortion.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.