Jesse CATCHING, Appellant,

v.

The STATE of Texas, Appellee.

No. 34968.

Court of Criminal Appeals of Texas.

Jan. 23, 1962.

Rehearing Denied Feb. 27, 1963.

Emmett F. Magee, Galveston, and Charles W. Gill, Houston, for appellant.

Jules Damiani, Jr., Dist. Atty., Galveston, Thomas L. Douvry, Asst. Dist. Atty., Galveston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is abortion; the punishment, 3 years.

The indictment alleged that appellant and Thomas Albert Forehand, acting together, did unlawfully, wilfully and designedly, with her consent "thrust and force into the womb and private parts" of prosecutrix, a pregnant woman, "an instrument calculated to produce abortion, and did then and there destroy the life of the fetus or embryo in the womb of the said (prosecutrix)."

Appellant's grounds for reversal will be considered in the order in which they are presented in his brief.

He first complains of the overruling of his motion to quash the indictment based upon the omission of a description of the instrument alleged to have been "thrust and forced" into the womb of the prosecutrix.

Our attention is directed to the case of Mayberry v. State, 160 Tex.Cr.R. 432, 271 S.W.2d 635, wherein the same contention was raised and we said: "It would have been the better practice, here, for the state to describe the instrument used, if known, and if not known, to so allege."

The indictment against Mayberry further alleged in the conjunctive that the abortion was performed by administering a drug and medicine. We followed the cases of Reum v. State, 49 Tex.Cr.R. 125, 90 S.W. 1109; Watson v. State, 9 Tex.App. 237; and Cave v. State, 33 Tex.Cr.R. 335, 26 S.W. 503, and held that a further description of the drugs or medicine was not necessary.

The indictment herein was drawn under that portion of the abortion statute (Art. 1191 P.C.) which provides that any person who knowingly shall use toward a pregnant woman "any violence or means whatever externally or internally applied, and thereby procure an abortion" shall be punished. The indictment herein is sufficient to charge such offense without further description of the instrument used.

Our conclusion is consistent with, if not required by, our holding that an indictment for procuring an abortion by administering any drug or medicine need not further describe such medicine or drug.

Our statement in Mayberry v. State, that it would be the *better practice* to describe the instrument used, would be equally applicable, we think, to the drug or medicine used. Mayberry v. State, supra, is not therefore authority for appellant's position.

Rupe v. State, 41 Tex. 33, cited by appellant, was not an abortion case but a prosecution under what is now Art. 1195, P.C., for destroying the life of an unborn child which would otherwise have been born alive. The indictment held insufficient merely alleged the words of that statute.

■ Appellant's second claim of reversible error relates to the refusal of the trial court to allow the appellant to prove before the jury, or for his bill of exception, the name of the man with whom the prosecutrix had had sexual intercourse and the number of times. We see no error but commend the trial court in his ruling upon these irrelevant facts.

■ We see no error in the ruling of the court concerning the questions addressed to prosecutrix as to why she appeared as a witness in the case. There was no intimation that the witness had testified falsely or that she had any bias or prejudice against accused. In the absence of the jury in perfecting his bill, appellant was unable to establish that prosecutrix was testifying because of threats to prosecute her if she did not do so. Having failed to establish the truth of the assertions contained in such questions, the holding in Ogburn v. State, 101 Tex.Cr.R. 180, 274 S.W. 638, relied upon by appellant, can have no application here.

■ Appellant's next complaint relates to the overruling of his motion to discharge the jury panel because of the court's reference to "the other case against this man."

Appellant relies upon his motion incorporated at the beginning of the Statement of Facts, with the trial court's ruling and his exception thereto.

Assuming that the question is before us under the provisions of Art. 760e, Vernon's Ann.C.C.P., and that no evidence was adduced in support of the motion to quash the jury panel, appellant is bound by the court's statement in overruling the motion, that he did not believe that any juror on the panel

heard the remark, and felt certain that none of them would have known what was meant by the remark if they did hear it. No error in the overruling of appellant's motion to quash the jury panel is shown.

■ Appellant's remaining claim of error relates to the admission of certain evidence and requires a statement of the facts proved.

Prosecutrix, a thirty-year old widow and the mother of three children, testified that she became pregnant, and, after realizing her condition, spoke to one Thomas Forehand and accompanied him and a woman named Martin from La Marque to a place in Galveston. Forehand parked his automobile and, after receiving $50 from her, went upstairs; in a short while he returned and accompanied her to appellant's apartment. Appellant took her into a room where he inserted a rubber tube into her vagina and told her to allow it to remain there for three days or until she had to go to a doctor. When she came back downstairs she rejoined Forehand and the Martin woman; that the latter left, was gone for a while and returned, after which they drove back to La Marque. The first effort to bring about an abortion was not successful, and she again went to Galveston with Forehand, where appellant re-inserted the rubber tube. Several days later, while staying at Forehand's apartment, she expelled the fetus into the commode.

Appellant made a written statement which was offered in evidence as his voluntary confession. Over objection, the following portion of such statement or confession was admitted.

"Sometime during the end of January, 1961, Tom called me and said he wanted to talk to me. I told him to come and see me. Several days later he came into my store at 1327 Ave. B in Galveston, Texas. I was in the store along with the boy who works for me. Tommie told me he had a girl that had gotten pregnant and was not married. He wanted me to perform an abor-

tion on her. He ask___ me how much I would charge and I told him $45.00. He then left. About a day later Tommie called me and told me the girl he had talked to me about had changed her mind, but he said he had another girl who he wanted me to perform an abortion on. I told him to bring the girl over to see me and we would talk it out together. About the first part of February, 1961, Tommie came to my house. It was at night. He came upstairs by himself. He told me he had both girls downstairs and he would give me $50.00 for the abortion on one, and the other girl would give me $50.00 for the abortion on her. We talked it over, and I agreed. He gave me $50. Tommie went downstairs, and then a tall, black-haired girl came up, and I took her into a bedroom, which is the first room to the right at the top of the stairs. I had her lay down in the bed and remove her panties. I then inserted a catheter into her womb. She got up, put on her panties and then left.

"—Tommie came back upstairs with a little blonde woman. He gave me $50.00 and then left. I took this woman into the bedroom and she removed her panties. I then had her lay down in the bed, and I inserted a catheter into her womb. It took me about twenty minutes for me to insert it. She then left. About four days later the black-haired woman came back to see me. She was with Tommie. They told me that the woman had to remove the catheter and wanted me to put it back. I put the catheter back into her womb for her. She and Tommie then left. * * *

"On the night of February 10, 1961, Sheriff Kline and some officers from the La Marque Police came to my store. Kline told me they knew about the abortions and also had a search warrant for my home. Kline told me they were looking for narcotics and the instruments I used in the abortions. I gave them a tool box containing several catheters, a knitting needle and other items that I used in the performance of abortions. They were in a dresser drawer in the bedroom I used in the abortions."

Appellant's complaint is that the confession included offenses other than that for which appellant was on trial, and that these matters should have been stricken, if the confession was introduced. Martinez v. State, 138 Tex.Cr.R. 51, 134 S.W.2d 276, is cited and relied upon.

One of the exceptions to the rule that requires the exclusion of evidence showing the commission of other crimes is when the evidence is admissible as res gestae. The exception applies here. The circumstances and details of the arrangements made with appellant for the abortion showed that appellant agreed with Forehand to abort two girls who were taken to him by Forehand the same day, Forehand paying appellant for his services.

The girl named in the indictment cannot be distinguished from the other girl aborted, from a reading of the confession.

The evidence, including appellant's confession to the abortion of the two girls, was admissible under Housman v. State, 155 Tex.Cr.R. 49, 230 S.W.2d 541, wherein we said:

"The State was entitled to prove the circumstances and details of her contacts with appellant on the occasions of being at appellant's home when the arrangements were made for the abortion, the visit when the act was performed for the purpose of aborting the witness, the money paid, and the return in accordance with instructions of appellant to confer regarding the passing of the fetus.

"If such transactions disclosed, by inference or otherwise, that appellant was engaged in the commission of other acts or abortion, it was nevertheless admissible as a part of the res gestae."

"If the State's proof of the home of appellant and the furniture, instruments, and equipment therein and the facts showing the use of such home and contents on the witness for the purpose

of aborting her for pay show that appellant was a professional abortionist or that her home contained a room equipped as an abortion operating room, such result does not change the rule as to the admissibility of such evidence as a part of the res gestae.

"Nor did the evidence become inadmissible because appellant did not testify or otherwise controvert the testimony as to her acts and intent."

The confession was also admissible under Richardson v. State, 101 Tex.Cr.R. 467, 276 S.W. 270. In that case we said:

"The incriminating part of the confession introduced was to the effect that appellant wrote some checks and signed J. C. Jones' name to them and carried them to the People's Guaranty State Bank and got the money; that one of the checks was for $7 and another for $6. The appellant objected to the introduction of said confession upon the ground that the same contained evidence of other transactions and offenses having no connection with the offense upon which defendant was upon trial in this cause and the evidence of other transactions or other offenses was wholly immaterial and irrelevant and was prejudicial to the defendant in this cause. It will be observed that the statement above set out is so worded that it would have been impracticable to have segregated the other offenses from the one for which the appellant was being tried. Under these conditions, we do not think the court erred in admitting the confession, although it carried with it suggestions of another offense. The mere fact that appellant used language in confessing to the crime for which he was on trial which would necessarily imply that he was guilty of another similar offense would not exclude the confession."

The prosecutrix testified that Forchand was present when she expelled the fetus in the commode, and that her doctor, Dr. John P. Reeves, came later.

Dr. Reeves testified that as he entered the house he saw a fetus of about four and a half months gestation floating in the commode, with part of the placenta and cord.

The prosecutrix testified that after Dr. Reeves left Forchand left and she did not see the fetus in the apartment thereafter. She also testified: "It was the understanding that he (Forehand) would take the fetus."

Over appellant's objection, the state was permitted to show that the following day the officers went to the garbage dump in Texas City, and through instructions given them by Forehand, found the fetus of a male child in a paper sack wrapped in some plastic amongst the garbage there at the dump.

It is appellant's contention that the evidence complained of constituted acts or admissions done or made in his absence after the conspiracy, if any, had been terminated. 12 Tex.Jur.2d p. 332, Par. 9, is cited where the rule is stated.

The rule that renders inadmissible acts or admissions of a co-conspirator done or made in the absence of the defendant after the conspiracy has been terminated, by the commission of the crime, has no application where it can be shown that the co-conspirator was found in possession of the fruits of the crime or the weapon or instrument with which the crime was committed. Henderson v. State, 50 Tex.Cr.R. 266, 96 S.W. 37; Sims v. State, 95 Tex.Cr.R. 164, 253 S.W. 278.

The fact that Forehand assisted the officers in finding the fetus did not render evidence of such discovery inadmissible. The finding of the fetus did not tend to criminate the appellant, but tended strongly to show that the fetus, the life of which had been destroyed by appellant pursuant to his agreement with Forehand and the

prosecutrix, had been taken by Forehand from the commode in the apartment to the place where it was found. Batson v. State, 36 Tex.Cr.R. 606, 38 S.W. 48.

█ Other evidence which bears upon appellant's guilt is the statement of appellant to the sheriff when his apartment was being searched: "That's what you get for helping a friend. I didn't do it for the money", and the evidence that he produced a metal tool box in which there were three rubber catheters, two wrapped on one end with gauze, "a large thin metal rod with a ball on one end, a box of gauze, a pair of small round-nosed scissors, a bottle of vaseline, two or three wash clothes and several towels * * *" and said "This is what you are looking for."

The evidence is sufficient to sustain the conviction and we find no reversible error.

The judgment is affirmed.

McDONALD, Judge (dissenting).

I dissent in this case because I think that the trial court erred in failing to sustain the appellant's motion to quash the indictment. The indictment contained only one count, and the only attempt to allege the means used in the alleged offense was to recite "an instrument calculated to produce abortion." The evidence reflects that a rubber tube with a piece of gauze at the end was described and identified by the complaining witness as being used with other material. The state did not allege that the means used were unknown to the grand jury. It is stated in 1 Tex.Jur.2d 171, Sec. 15, that:

"* * * where the abortion is charged to have been effected by the use of a certain instrument calculated to produce an abortion, it is the better practice for the state to describe the instrument, if known, and if not known, to so allege. In any event if the description of the instrument alleged to have been used is defective, the defect may be cured by an averment in a subsequent count that the name and char-

acter of the instrument is unknown to the grand jurors."

In Mayberry v. State, 271 S.W.2d 635, this court held as follows:

"There is no question but that the accused is entitled to notice in the indictment of the accusation against him, in order that he may prepare his defense thereto. It would have been the better practice, here, for the state to describe the instrument used, if known, and if not known, to so allege."

In Mayberry, a general verdict was returned and there was no showing that appellant's guilt depended upon the allegation in the indictment that the abortion was caused by a "certain instrument," as the case was also submitted to the jury on an allegation that the abortion was caused by the use of drugs. The evidence amply supported a finding that the abortion occurred as much by reason of the use of a drug and medicine as that it was caused by the use of the instrument, and the proof showed that the instrument was used to administer the drug.

The facts in the case at bar are not on a parallel with the facts in the Mayberry case. Here, it is conclusively shown that an abortion had been committed by the use of an instrument. No drugs were used nor involved. The rule, in my judgment, is different in this state in *abortion cases involving the use of medicines and drugs* than in those *abortion cases involving the use of instruments.*

The majority attempt to distinguish Mayberry, supra, with the statement: "* * * a further description of the drugs or medicine was not necessary." This statement, certainly, is not indicative, nor does it even imply, that a further description of the *INSTRUMENT* was not necessary.

I have carefully examined all the holdings of this court and I find that an indictment for abortion, or for an attempt to procure an abortion, *need not give the name*

*of the drug or medicine used* if it contains an allegation that such drug or medicine was calculated to procure an abortion. This statement is supported by the holdings in Hunter v. State, 81 Tex.Cr.R. 471, 196 S.W. 820, Cave v. State, 33 Tex.Cr.R. 335, 26 S.W. 503, Watson v. State, 9 Tex.App. 237, Reum v. State, 49 Tex.Cr.R. 125, 90 S.W. 1109, and Mayberry v. State, supra.

I also feel that the portions of appellant's confession which refer to his performance of abortions and the bed he used in the abortions could be considered by the jury as admissions that he had been guilty of engaging in the business of producing abortions, and such statements were reasonably calculated to prejudice his rights with the jury. It is a general rule that the state may not introduce, in developing its case in chief, evidence which has no tendency to prove some material fact in connection with the offense charged but merely tends to show that the accused is a criminal, generally. Roark v. State, 101 Tex.Cr.R. 401, 276 S.W. 242; Martinez v. State, 138 Tex. Cr.R. 51, 134 S.W.2d 276; and Garcia v. State, 165 Tex.Cr.R. 134, 305 S.W.2d 605.

For the reasons stated, I dissent to the affirmance of this case.