John A. Gallucci, J.
The defendant was indicted by Indictment No. 70-123, and upon arraignment, entered a plea of not guilty.
The indictment charges the defendant under three counts with the felonies of manslaughter in the second degree, criminally negligent homicide, and criminally selling a dangerous drug in the third degree.
The indictment reads as follows:
11 THE GRAND JURY OF THE COUNTY OF ROCKLAND, by this indictment, accuse william l. pinckney of the crime of manslaughter in the second degree, committed as follows:
“ The said William L. Pinckney, in the Village of West Haver straw, County of Rockland and State of New York, on the 4th day of April, 1970, wilfully, wrongfully and unlawfully did recklessly cause the death of one Francis John Muthig, also known as John Francis Muthig, by then and there selling to and providing said Francis John Muthig with a quantity of the narcotic drug Heroin which said Francis J ohn Muthig immediately, with the instruments furnished to him by said William L. Pinckney, prepared for injection and did inject into his body, as a direct result of which said Francis John Muthig thereafter, on the 5th day of April, 1970, died, the said William L. Pinckney knowing the said Heroin to be a dangerous drug; against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity.
“ SECOND COUNT:
and the grand jury aforesaid, by this indictment, further accuse william l. pinckney of the crime of criminally negligent homicide, committed as follows:
“ The said William L. Pinckney, in the Village of West Haverstraw, County of Rockland and State of New York, on the 4th day of April, 1970, wilfully, wrongfully and unlawfully, with criminal negligence, caused the death of one Francis J ohn Muthig, also known as John Francis Muthig, by then and there selling to and provided said Francis John Muthig with a quantity of the narcotic drug Heroin which said Francis John Muthig immediately, with the instruments furnished to him by *267 said William L. Pinckney, prepared for injection and did inject into his body, as a direct result of which said Francis John Muthig thereafter, on the 5th day of April, 1970, died, the said William L. Pinckney knowing the said Heroin to be a dangerous drug; against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity.
‘1 third count :
and the grand jury aforesaid, by this indictment, further accuse william l. pinckney of the crime of criminally selling a dangerous drug, in the third degree, committed as follows:
“ The said William L. Pinckney, in the Village of West Haverstraw, County of Rockland and State of New York, on the 4th day of April, 1970, wilfully, wrongfully and unlawfully did knowingly sell to one Francis John Muthig, also known as John Francis Muthig, a quantity of the narcotic drug Heroin, for which said William L. Pinckney received and said Francis John Muthig paid, as the consideration for said sale, $15.00 in lawful money of the United States of America; against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity.”
The defendant has moved and seeks relief as follows: (1) for a dismissal of counts one and two on the ground that they fail to allege facts which constitute a criminal offense; (2) for inspection of the Grand Jury minutes or, in the alternative, for a dismissal of the three counts in the indictment; (3) for discovery and inspection; (4) for disclosure as to whether eavesdropping or wiretapping orders were used; and (5) a bill of particulars.
The court will consider first defendant’s application for a dismissal of counts one and two of the indictment on the ground that they fail to allege facts which constitute a criminal offense. The court will treat that portion of defendant’s application as a demurrer to the indictment under subdivision 4 of section 323 of the Code of Criminal Procedure, which reads as follows:
‘ ‘ The defendant may demur to the indictment, or any count thereof, when it appears upon the face thereof * * * 4. That the facts stated do not constitute a crime ”.
As to the third count (Penal Law, § 220.35), the defendant, does not in effect demur thereto. In any event, the court is of the opinion that the third count conforms and complies substantially with the requirements of sections 275 and 276 of the Code of Criminal Procedure.
*268 The defendant contends, with respect to counts one and twp, the indictment fails to state and set forth criminal conduct as a matter of law. He argues that although said counts charge the defendant with causing the death of Francis John Muthig by reckless and negligent conduct of the defendant, the facts as stated in each of said two counts do not set forth reckless or criminally negligent conduct. He also claims that the Legislature did not intend the crimes of manslaughter in the second degree and criminally negligent homicide to apply in this type of a case, to wit, where it is alleged the defendant knowing heroin to be a dangerous drug, sold it to the victim, provided the victim with the instruments for injecting it into his body, thereafter the victim did inject the dangerous drug into his body and died as a result thereof.
Section 125.15 of the Penal Law provides: “ A person is guilty of manslaughter in the second degree when: 1. He recklessly causes the death of another person ’ ’.
Subdivision 3 of section 15.05 of the Penal Law defines ‘ ‘ recklessly ”, as follows: “ A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”
Section 125.10 of the Penal Law provides: “A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.”
Subdivision 4 of section 15.05 defines “ criminal negligence ” as follows: “A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.”
The indictment charges that the defendant recklessly and with criminal negligence caused the death of another person, Francis John Muthig. It charges in a plain and concise manner, without unnecessary repetition, that the defendant committed certain acts which in form purportedly constitute the crimes of manslaughter in the second .degree and criminally negligent homicide. (Code Crim. Pro., § 275, subd. 2; People *269 v. Ferguson, 55 Misc 2d 823.) As a matter of pleading, therefore, the indictment against the defendant is proper in form and is not subject to dismissal.
The defendant’s demurrer, however, presents the court with an issue not of form but of substance and legislative intent. A demurrer requires the court to accept as true and admitted the factual allegations charged against the defendant. (People v. Wright, 12 Misc 2d 961; People v. Squillante, 12 Misc 2d 514; People v. Chester, 4 Misc 2d 949; People v. Kalbfeld, 124 Misc. 200.) Hence, the issue presented is not the truth or falsity of defendant’s conduct or the sufficiency of the evidence before the Grand Jury against the defendant. “ The real issue here is whether or not defendant’s alleged acts come within the purview of the evils which the statutes condemn. Was the legislative purpose behind these penal sections to deter and/or to punish what defendant is accused of doing? ” (People v. Lo Pinto, 49 Misc 2d 997, 998). In other words, assuming that the defendant sold a dangerous drug, heroin, to one Francis John Muthig and that Muthig then injected the drug into his own body with implements supplied by the defendant, and died as a result thereof, did the defendant, as a matter of law, commit either the crime of manslaughter in the second degree or criminally negligent homicide, or both?
The defendant stands accused of the crimes of manslaughter in the second degree and criminally negligent homicide. Notwithstanding that said crimes encompass various factual situations incapable of precise definition or limitation by statute, the court has been unable to find any reported New York case wherein a seller of dangerous drugs has been indicted or convicted of the crime of manslaughter or criminally negligent homicide when the drug sold by him has been injected by the purchaser into his own body and causes his death. The present indictment is, therefore, a new and expanded application of sections 125.15 and 125.10 of the Penal Law of this State and is a case of first impression to the court.
The court is aware of and has reviewed the court decisions of this State involving similar facts as are present in this case, namely, (1) illegal sales of wood alcohol beverages (People v. Licenziata, 199 App. Div. 106; People v. Voelker, 220 App. Div. 528; People v. Haber, 221 App. Div. 150; People v. Gordon, 258 App. Div. 983), and (2) illegal use or sale of implements or drugs for the purpose of committing an abortion. (People v. McGonegal, 136 N. Y. 62; People v. Williams, 260 App. Div. 1024, affid. 285 N. Y. 728; People v. Chester, 179 Misc. 864.)
*270 In the wood alcohol cases, the deleterious substance was by its very nature poisonous and the obvious result of its use, death, was known to a defendant seller at the time of sale. On the other hand, although it is a matter of common knowledge that the use of heroin can result in death, it is also a known fact that an injection of heroin into the body does not generally cause death.
The homicide cases involving a sale or use of an illegal drug or instrument for the purpose of causing an abortion were prosecutions pursuant to express statutory provisions (former Penal Law, § 1050; Penal Law, § 125.15, subd. 2). There are no provisions contained in the present Penal Law, however, which set forth that the illegal sale of a dangerous drug which results in death to the user thereof constitutes manslaughter or criminally negligent homicide.
The hereinbefore mentioned wood alcohol and abortion cases are, therefore, clearly distinguishable from the present case.
The court has also read the State of California judicial decisions which apply the felony murder doctrine as the basis for homicide prosecutions against sellers of dangerous drugs where death ensues from the use thereof. (People v. Cline, 270
Cal. App. 2d 328, and other California cases outlined in Ann. 32 ALB 3d 589.) Since the indictment before the court does not include a count of murder against the defendant, the California cases have no applicability to defendant’s application for a dismissal of the instant indictment.
_The problem of controlling the sale, use and distribution of dangerous drugs is long standing. The State of New York has recognized that it has been and is a serious problem. Laws were adopted in an attempt to overcome it. (Former Penal Law, §§ 1751 to 1753 inclusive.) Nevertheless, in recent years there has been a tremendous increase in the use of dangerous drugs to the degree that it is of epidemic proportion and has created a crisis throughout the country. There has also been a great increase in the number of prosecutions and convictions involving the possession and sale of dangerous drugs. In recognition of this growing problem, the Legislature of the State of New York has tried to cope with it. Penal sanctions were set forth in the new Penal Law (see Dangerous Drug Offenses, §§ 220.00 to 220.45 inclusive), and a program for treatment of drug addicts has been established (see Mental Hygiene Law, art. 9). The Legislature has further emphasized the seriousness of illegal drug traffic by increasing the punishment to be imposed upon persons convicted of drug crimes. ('See Penal Law, §§ 220.05 to 220.44 inclusive, eff. Sept. 1,1969.)
*271 No part of recent drug control legislation includes, however, any amendment or addition to the homicide provisions of the Penal Law. This court can only conclude, therefore, that it is the present policy of the State of New York to control dangerous drug sales and usage by imposing increasingly severe punishment, but not to include illegal sales of dangerous drugs resulting in death within the purview of manslaughter or criminally negligent homicide. While the court may properly interpret the scope of existing legislation, it is not the function of the court itself to make new laws or to suggest the subject matter for legislative action. The court will not do indirectly that which the Legislature has refused to do directly.
Accordingly, the court finds that the existing homicide statutes do not encompass the factual situation set forth in this case. Defendant’s demurrer to counts one and two of the indictment is sustained and said counts are dismissed. The balance of the. motion is denied without prejudice, however, to the defendant, if so advised, to reapply for any of the remaining relief sought.
The court will conclude by repeating the words of Mr. Justice Shapiro in People v. Sigismondi (49 Misc 2d 1, 9) when he dismissed an indictment for assault second degree and felonious possession of a dangerous weapon, a knife, for lack of corroboration of the victim’s testimony which indicated that a consummated rape had taken place. They are appropriate and applicable to this case and express the sentiments of this court with-respect to its decision herein. He said: ‘ ‘ Reluctant as I am to come to the conclusion here enunciated I am somewhat solaced by the fact that if I am in error I can be quickly corrected because the District Attorney has the right to appeal from the order to be entered on this decision (Code Crim. Pro., § 518, subd. 3). In my opinion it is both desirable and expedient that he do so forthwith.
‘ ‘ Whatever the determination of the Appellate Division may be, the party aggrieved may, by permission, take a further appeal to'the Court of Appeals (Code Grim. Pro., § 519, subd. 3; § 520) and for the purpose of having the law definitely defined in this highly important area of human rights it would seem to be no less desirable that such an appeal be taken.
“ Whatever doubt there may be in this matter I am resolving against the People since * * * they have here the right of appeal. To require a trial in this case which might turn out to be an exercise in futility would not, in my opinion, be in furtherance of justice.”